WILLIAM SIPSAS, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 14927

March 28, 1986                                716 P.2d 231

*Johns & Johns,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Las Vegas, for Respondent.

## OPINION

By the Court, FOLEY, D. J.:

William Sipsas was convicted of first degree murder and child abuse for the death of his live-in girl friend's five-year old daughter, Jennelle Kay Rahja. Jennelle bled to death as a result of

a blunt force injury to her abdomen, which ruptured her mesentery.[1]

Sipsas testified that on the day of her death, Jennelle had choked on a sandwich and he stopped the choking by use of the Heimlich Maneuver. He stated he pumped her stomach and jammed his finger into her mouth until she coughed up the sandwich and began breathing again. He also testified that at about 3:00 a.m. on the day of her death, Jennelle was playing with an ashtray and other things on the coffee table in the living room where she slept. Sipsas grabbed her, slapping her on the chest with his hands, and then swatted her buttocks so "awfully hard" that his own hand hurt.[2] At the police station, after having been given his Miranda[3] rights, Sipsas asked how the child was doing, and the investigating officer advised him that Jennelle was dead. In response, Sipsas put his face in the palm of his hands and said "[S]he had been crying for a couple of days. I lost my head and beat her." Sipsas then told police that he disciplined Jennelle by hitting her with his hands and with a wooden spoon.

At trial, Dr. Giles Sheldon Green, the State's expert who also performed the autopsy, testified that many of the bruises on Jennelle's body were the result of injuries occurring two weeks before her death. Dr. Green concluded that Jennelle was a victim of child abuse.

The defense expert, Dr. Ervin Jindrich, Coroner for Marin County, California, stated that the bruises on Jennelle were no older than 20 hours before death. He testified that it was "theoretically possible" for the child's internal injuries to have been caused by the Heimlich Maneuver, although he had never seen such a result. Dr. Jindrich also testified that in his opinion, the evidence was insufficient to conclude that Jennelle was a battered child.

A three-judge panel sentenced Sipsas to life without the possibility of parole for the first degree murder count.[4] The trial court sentenced Sipsas to twenty years in prison for the felony child

---

[1]The mesentery is a long structure which attaches the intestine to the rest of the body. It carries all the blood vessels to and from the entire small intestine.

[2]Sipsas took care of Jennelle while Jennelle's mother, Lori Rahja, worked. Lori testified that she never noticed any bruises on Jennelle except for one, and stated that Sipsas bathed and disciplined Jennelle and Jennelle dressed herself.

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

[4]A three-judge panel was convened because the jury was unable to reach a verdict at the penalty phase.

abuse, to run consecutively to the sentence for murder. Sipsas filed a motion for new trial on numerous grounds. The district court denied the motion and this appeal followed.

## Admission of the Photographs

Numerous autopsy photographs of the deceased child were offered and received into evidence. Eight were photographs taken at the morgue, from which testimony as to the size, coloration, extent and number of bruises was derived. Four other photographs showed the child just prior to evisceration.

While the State's expert, Dr. Green, was testifying, the district attorney attempted to lay a proper foundation for the admission of one particular autopsy photo—Exhibit 28. That color photograph shows the body during evisceration with the skin opened, exposing the child's organs. The photograph is distinctly abhorrent and repulsive. The exchange of dialogue between the district attorney and Dr. Green was as follows:

Q. [Can you identify Exhibit 28?]
A. This photograph was taken after the initial incision to open the body. It shows the contents of the abdomen, from blood still there; And this loop of small intestine, which is a very dark dusky red color.
Q. Would it aid you in your explanation of these findings to the jury to refer to that which is depicted in that photograph?
A. *Possibly.*
Q. Was this condition linked to the cause of death?
A. Yes, it was.
Q. Would it, therefore, help you in your explanation to [sic] the cause of death to refer to what is shown in this photograph to examine the phenomenon involved?
A. *It might.* (Emphasis added.)

After this testimony, the photograph was offered and objected to, and a hearing was held outside the presence of the jury in accord with Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977). The district court, after hearing the matter, and presumably having in mind the expert's indefinite answers, stated: "I think I should also state on the record that I find the prejudicial effect [of the photograph] outweighs the probative value." Thus, the photograph was denied admission. The examination of Dr. Green continued without the use of Exhibit 28.

After the State rested its case, the defense called Dr. Morton Wooley, an expert in the field of plastic surgery. For his testimony, Dr. Wooley relied on all of the admitted photographs and as well on Dr. Green's pathology report. Dr. Wooley was asked by defense counsel:

Q. Does the pathologist's report, Exhibit No. 30, contain a thorough and accurate description of the internal hemorrhaging in the abdominal area?

A. Yes. It's a very good, thorough description, in my opinion.

During cross-examination, Dr. Wooley stated that his opinion was based, at least in part, on the autopsy report, emergency room records, and some "65 photographs." The prosecutor inquired of the doctor:

Q. You say that one of the things that, specifically, that you based your opinion on was review of the photographs of the ilium itself.

I'm going to show you Exhibit No. 28 and ask if that is an enlargement of the photograph that you looked at, upon which you based your opinion?

A. It is.

At this time, the State moved for the admission of Exhibit 28, and the motion was granted. It appears from the record that the photograph was admitted pursuant to NRS 50.125(1)(d).[5]

The photograph, however, was not used to refresh the memory of Dr. Wooley. Before refreshing a witness's memory it must appear that the witness has no recollection of the evidence to be refreshed. Dr. Wooley was capable of testifying from Dr. Green's pathology report which presented a "thorough description" of the internal areas of the child's body. Although he had previously viewed the photograph, it was not used, nor was it needed, to refresh Dr. Wooley's recollection of the event. The photograph, therefore, was improperly admitted on the grounds of NRS 50.125(1)(d).

Admissibility of photographs "lies within the sound discretion of the district court, and, absent an abuse of that discretion, the decision will not be overturned." Turpen v. State, 94 Nev. 576, 577, 583 P.2d 1083, 1084 (1978) (citing Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977)). It is within the district court's discretion to admit photographs where the probative value outweighs any prejudicial effect the photographs might have on the jury. See Allen v. State, 91 Nev. 78, 530 P.2d 1195 (1975); Ybarra v. State, 100 Nev. 167, 679 P.2d 797 (1984).

The admissibility of Exhibit 28 was determined in a hearing

---

[5]NRS 50.125(1)(d) states:

1. If a witness uses a writing to refresh his memory, either before or while testifying, an adverse party is entitled:

. . .

(d) To introduce in evidence those portions which relate to the testimony of the witness for the purpose of affecting his credibility.

outside the presence of the jury when the State initially sought admission of the photograph. At that time, the court found that the prejudicial effect of the photograph outweighed any possible probative value. The record does not reflect that the trial court ever reversed this previous finding. Instead, the court incorrectly admitted the photograph under the guise of NRS 50.125(1)(d). This is an abuse of the court's discretion. As the court found initially, the photograph in question was more prejudicial than probative, and the admission was in error.[6]

Standing alone, the admission of the photograph might not warrant reversal. However, as discussed below, the accumulation of error in this case resulted in Sipsas being denied his constitutional right to a fair trial.

## Prosecutorial Misconduct

Ervin J. Jindrich, M.D., was qualified as an expert witness.[7] The State rejected the opportunity to conduct a *voir dire* examination of the doctor's competency as an expert, and Dr. Jindrich was qualified as an expert in the field of forensic pathology. Notwithstanding the rules of professional conduct prescribed under Supreme Court Rule 188(4), the prosecutor expressed the following vituperative remarks during closing argument:

---

[6]It is of no surprise that the district court originally found the photograph to be more prejudicial than probative. No jury could be free from thoughts of compassion and sympathy after viewing an 8x10 inch color photograph of an eviscerated child. A photograph lends dimension to otherwise non-dimensional testimonial evidence. That an erroneous admission of a photograph would cause undue prejudice is certain. The extent of that prejudice is immeasurable.

[7]The qualifications of the expert, Dr. Jindrich, follow:

He is a medical doctor, attended Northwestern University Medical School from 1960 to 1964, held a rotating internship at Charity Hospital in New Orleans, Louisiana, from 1964 to 1965, entered the United States Army, serving both in Korea and later in Colorado Springs, Colorado, as a general medical officer from 1965 to 1967. He then moved to California and practiced as a general practitioner in the County of Contra Costa, both in the clinic and in the emergency room of its County Hospital. He began a pathology residence at Kaiser Hospital in San Francisco in 1968. He was there from 1968 until 1972, studying both anatomic pathology and clinical pathology and became Board-certified in both. He was granted a fellowship by the college of American pathologists, to study forensic pathology, which is medical-legal pathology, and he was also Board-certified in forensic pathology. He was appointed as coroner of the City and County of San Francisco, reorganized that office and became Chief Medical Examiner of the City and County of San Francisco. He then ran for and was elected to the office of Coroner of Marin County in 1974. He took office in January of 1975 and has served continuously in that capacity ever since, having been re-elected in 1978 and 1982.

Now, that brings us to to [sic] Dr. Jindrich. The hired gun from Hot Tub Country. Have stethoscope, will travel.

. . .

I think Dr. Jindrich is a living example of Lincoln's law. You can fool all of the people enough of the time.
He is a politician. He runs for office.

No objection was made to these comments. As a general rule, the failure to object, assign misconduct, or request an instruction will preclude review by this court. Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962). "However, where the errors are patently prejudicial and inevitably inflame or excite the passions of the jurors against the accused, the general rule does not apply." *Garner,* 78 Nev. at 373, 374 P.2d at 529. In this case, the prosecutorial misconduct was so prejudicial as to require court intervention *sua sponte* to protect the defendant's right to a fair trial. *See Garner,* above; *see also* McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984). Failure to do so was error.

The state argues that any error resulting from the prosecutor's comments was, at most, harmless. While the improper comments of the prosecutor, alone, may have constituted only harmless error, the cumulative effect of the offensive comments and the inadmissible photograph warrant reversal. The accumulation of error is more serious than either isolated breach, and resulted in the denial of a fair trial.

Moreover, we note that the evidence against Sipsas was less than overwhelming on the question of whether Sipsas harbored the requisite intent to be convicted of first degree murder. This question was hotly disputed at trial, and we therefore cannot say that the above two errors did not influence the jury's finding of guilt in this regard.

In reviewing the record it is apparent that because of cumulative error, Sipsas was denied his constitutional right to a fair trial. Accordingly, the judgment is reversed, the sentence vacated, and the cause remanded for a new trial.[8]

MOWBRAY, C. J., and SPRINGER and GUNDERSON, JJ., and McGROARTY, D. J.,[9] concur.

---

[8]The Honorable Richard Bryan, Governor. designated The Honorable Thomas A. Foley, District Judge of the Eighth Judicial District, to sit on this case. Nev. Const., art. 6, § 4.

[9]The Honorable Richard Bryan, Governor, designated The Honorable John S. McGroarty, District Judge of the Eighth Judicial District, to sit on this case in the place of THE HONORABLE THOMAS L. STEFFEN, Justice, who recused himself. Nev. Const., art. 6, 4.