490

BRIAN McKAY, Attorney General of the State of Nevada, Appellant, v. BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, NEVADA: HERBERT WITT, ROBERT PRUETT, BARBARA COOK and ROBERT OSWALD, in their capacity as Commissioners for the County of Douglas, and BRENT KOLVET, in his official capacity as District Attorney of Douglas County, Nevada, Respondents.

No. 17617

November 30, 1987                    746 P.2d 124

*Brian McKay,* Attorney General, *Scott W. Doyle,* Deputy Attorney General, Carson City, for Appellant.

*Brent T. Kolvet,* District Attorney, *Stephen Balkenbush,* Deputy District Attorney, Douglas County, for Respondents.

# OPINION

By the Court, SPRINGER, J.:

Nevada's Open Meeting Law[1] requires all meetings of public bodies to be public meetings "except as otherwise specifically provided by statute." On December 6, 1984, the Douglas County Board of County Commissioners, a public body, conducted a closed meeting with its attorney. Since there is no statute which provides a specific exception permitting public bodies to hold closed meetings simply because their attorneys are present, the meeting was in violation of the open meeting law.

The closed meeting arose out of the following set of circumstances. During the afternoon session of a regularly scheduled public meeting, the board's legal counsel brought up the subject of a proposed settlement offer by the liability insurance carrier which was defending a professional liability claim involving the county and an architecture firm. Two members of the board had expressed dissatisfaction with the insurance carrier's settlement offer, and the board had directed that the district attorney there and then discuss the matter further with the insurance carrier. After meeting with representatives of the insurance carrier in a nearby room the district attorney returned to the public meeting and requested that the board reconvene in a closed, executive session in order to discuss the settlement matters. A representative of the news media objected to the proposed closed meeting; whereupon the board nonetheless passed unanimously a motion to convene for a closed "executive meeting" with the district attorney and certain state and county employees. The closed session lasted approximately twenty-five minutes, after which the board reconvened the regular public meeting and voted to accept the original settlement proposal.

The law is clear: Absent a statute that "specifically provided" an exception for attorneys, the meeting had to be "open and public." There is no statutory exception specifically providing public bodies with the privilege to meet in private just because they have their attorneys present; hence, such meetings are prohibited. The idea that a public body can legally hold a closed

---

[1]NRS 241.020(1) reads as follows:

1. Except as otherwise specifically provided by statute, all meetings of public bodies shall be open and public, and all persons shall be permitted to attend any meetings of these bodies. Public officers and employees responsible for these meetings must make reasonable efforts to assist and accommodate physically handicapped persons desiring to attend.

meeting with its lawyer in the face of the statutory prohibition can be advanced only by accepting one or the other of the following propositions: (1) authority to conduct a closed meeting with legal counsel is an *implied* and unstated provision of the open meeting law which the legislature must have intended but for some unknown reason failed to enact, or, (2) there is some kind of unspoken, constitutional, statutory, common law or public policy consideration that supercedes and overcomes the language of the open meeting law and permits public bodies to hold closed meetings if they include their attorneys.

Initially it is important to note with respect to the first proposition, the implied exception argument, that it is not the business of this court to fill in alleged legislative omissions based on conjecture as to what the legislature would or should have done. This is especially true when the legislature has already stated in as unambiguous terms as can be imagined that if there are to be any exceptions to the rule of publicity, they must be "specifically provided by statute." To imply an exception in the face of this straightforward language would be in direct opposition to the expressed legislative intent.

When it has been deemed suitable to do so, the legislature has from time to time "specifically provided" certain exceptions to the open meeting requirement. Exceptions provided which permit closed meetings, for example, include questions of personal character, misconduct, competence and health (NRS 241.030(1)). In addition to these exceptions, the legislature, in other NRS chapters, has enacted a series of specific exceptions to the general rule of publicity. (*See* NRS 281.511(9), 286.150(2), 288.220, 630.336, 392.467(3)). When the legislature intends to make exceptions to the rule of publicity, it does so *specifically by statute*. In view of the method which the legislature has followed with regard to the rule of publicity, it is otiose to argue that the legislature *really* meant to include an "attorney-client" exception in the open meeting law but did not get around to it.[2] Even if we were to believe that the legislature had intended to enact such an exception, the wording of the open meeting law requiring excep-

---

[2]It appears that the legislature's intent was directly to the contrary. On a number of occasions the legislature has seen fit to reject an "attorney-client" exception. Each of the following proposed statutes contained unsuccessful amendments providing an express exception for public bodies to meet with their counsel: Assembly Bill 437, 59th Sess., *Journal of the Assembly,* 1977, at 1311; Assembly Bill 57, 61st Sess., Assembly Committee on Government Affairs, Feb. 17, 1981, at 6-10; Senate Bill 246, 62nd Sess., *Journal of the Senate,* 1983, at 307; Assembly Bill 118, 63rd Sess., *Journal of the Assembly,* 1985, at 85; Assembly Bill 26, 64th Sess., *Assembly Daily History,* 1987.

tions to be expressly enacted and "specifically provided" fore-closes the court from reading in or implying exceptions to the rule of publicity. As clearly as it possibly could, the legislature has expressed its will: Meetings of public bodies shall be "open and public," *unless* the legislature subsequently enacts a statute specifically providing an exception to the rule of publicity.[3]

This court's position is squarely supported by Laman v. McCord, 432 S.W.2d 753 (Ark. 1968), in which the Supreme Court of Arkansas rejected a city's argument that an attorney-client privilege should be judicially imposed so that the public body could prepare its case without having to disclose its strategy and possible weaknesses to adversaries. Essentially the same contention is advanced by the public body in the case before us. The Arkansas court based its decision upholding the open meeting law upon a literal interpretation of the statutory language, "[e]xcept as otherwise *specifically* provided by law, all meetings . . . of the governing bodies of all municipalities . . . shall be public meetings." (Emphasis in original.) Reasoning that "specifically" meant "explicitly," "definitely," and "in so many words," the Arkansas Supreme Court rightly concluded that since the legislature did not provide a specific exception for meetings of the city council and the city attorney, no exception existed. *See* Neu v. Miami Herald Publishing Company, 462 So.2d 821 (Fla. 1985).

Since no attorney-client privilege can be *implied* from the wording of Nevada's open meeting law, we turn to the second possible argument, namely, that we should recognize some independent, immutable right of private consultation between public boards and their attorneys which supercedes the legislative power and which allows public bodies to hold private meetings with their attorneys, without regard to the open-meeting legislation. This second argument deals not with an "implied" exception, which is to say an exception inferred from the nature and content of the statute itself; rather the issue now becomes whether some independent, constitutional, statutory, common law or public policy consideration supercedes and overcomes the language of the statute and permits private meetings between public bodies and lawyers notwithstanding the mandate of openness contained in the open meeting statute.

---

[3]In an explicit expression of legislative intent, NRS 241.010 declares: "In enacting this chapter, the legislature finds and declares that all public bodies exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly." It is hard to see how the legislature could have made this matter any clearer.

If such a superceding right to hold closed meetings were to be recognized, it would have to be derived from either of two possible sources: the privilege of a client that an attorney not be compelled to testify concerning confidential attorney-client communications, or, the ethical imperative that an attorney not reveal a client's secrets.

The difference between these two possible sources of the claimed right to hold a private meeting between a public body and its attorney has been expressed in the following terms:

> The principle of confidentiality [between attorney and client] is given effect in two related bodies of law, the attorney-client privilege in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise be required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.[4]

Accepting this clear distinction, we can quickly eliminate discussion of the evidential attorney-client privilege as a basis for the asserted exception. Because the question of a lawyer's being called in judicial or other proceedings as a witness or otherwise being compelled to produce evidence concerning a client is not presented here, the evidential client-attorney privilege has no application in the case before us.

So turn we must from the substantive statutory privilege (NRS 49.095) to the area of professional ethics and ask ourselves if there is anything in traditional or codified professional ethics that might have the force to supercede and, in effect, annul the open meeting law when public bodies meet with public lawyers.

Nevada Supreme Court Rule 156(1), dealing with lawyers' ethical conduct, provides that a "lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation. . . ." The quoted rule imposes a *duty* on all attorneys to keep client information to themselves and not to *reveal* professional secrets. The public attorney in this case argues that his not being allowed to meet with the full county board at once in private somehow forces him to reveal secret client information.

The answer to the district attorney's contention is simply that

---

[4]Model Rules of Professional Conduct Rule 1.6 comment (1983).

the open meeting law does not require in any way that he betray his client's confidences. All the law does is restrict his capacity to deal with his client in the usual and customary manner when the public body he represents is meeting *as a body.* We can understand the district attorney's frustration at not being able to deal quite as freely and privately in the board meeting as is customary in other client-attorney dealings; but this is not the same as saying that there is a compulsion to reveal secrets which, if yielded to, would result in a violation of supreme court rules. If the attorney had proceeded with his business at the open meeting, he certainly would not have been subject to disciplinary action for ethical violations. It would be a broad reading of the cited ethical rule indeed if it were read to give a public attorney the right to clear the press and public out of a public meeting room.

What the open meeting law is about is public *meetings.* A meeting is a "gathering of members of a public body at which a *quorum* is present to deliberate toward a decision. . . ." NRS 241.015 (emphasis added). A public body that meets as a body must meet in public. This does not mean that public lawyers are forced to reveal their public clients' secrets or that public lawyers may not communicate with their public clients in confidence. Were the statute in question to require by its terms disclosure of confidential client information or to forbid any confidential communication between attorneys and public bodies or their members, we should have to look at the statute in a different light.[5]

The present law merely requires that a quorum of a board, even when attorney-client business is being conducted, must hold open meetings. Although this requirement might create some measure of frustration or inconvenience in the parties' legal dealings, it is certainly not the kind of arrangement that can be said to destroy the relationship and make it impossible for a public body to receive the legal advice necessary to carry out the public business. Nothing whatever precludes an attorney for a public body

---

[5]There is certainly a point at which legislation could be seen as an unwarranted intrusion into the judicial process or into the attorney-client relationship. For example, a statute could not lawfully interfere with the right of a criminally accused to meet privately with an attorney. Another example would be a law which prohibited all confidential communications between members of public bodies and their attorneys. In the open meeting law itself is a declaration that "all public bodies exist to aid in the conduct of the people's business." A law which substantially frustrates the ability of a public body to receive confidential communications from its attorney would quite obviously limit the capacity of a public body "to aid in the conduct of the people's business." Confidentiality goes to the very heart of the advisor-advisee relationship, and there comes a point at which mandatory disclosure of confidences or prohibition of all confidential communication could destroy the relationship. This point, quite clearly, is not reached in the law as it is now written.

from conveying sensitive information to the members of a public body by confidential memorandum; nor does anything prevent the attorney from discussing sensitive information in private with members of the body, singly or in groups less than a quorum. Any detriment suffered by the public body in this regard must be assumed to have been weighed by the legislature in adopting this legislation. The legislature has made a legitimate policy choice— one in which this court cannot and will not interfere.

It is not consistent with the legislature's expressed intent to say that a public board is entitled, when it so chooses, to convene in closed meeting so long as it includes its attorney. No common law principle or consideration of public policy requires that public bodies be given this privilege in the face of the clear language of the open meeting law. The open meeting law bans closed meetings in all cases not specially excepted. This case is not specially excepted; hence, the meeting in question was in violation of Nevada Revised Statutes Chapter 241. The judgment of the trial court denying the injunctive relief demanded by the attorney general is reversed.

GUNDERSON, C. J., STEFFEN, YOUNG, and MOWBRAY, JJ., concur.