RONALD ROBERT TODD, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 26742

January 3, 1997                                        931 P.2d 721

*Joseph R. Plater,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, *Gary H. Hatlestad,* Chief Appellate Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, Rose, J.:

Appellant Ronald Todd was found guilty of robbery with use of a deadly weapon and kidnapping in the second degree. On appeal, Todd argued that reversible errors occurred at trial and that he should receive a new trial. We conclude that Todd's failure to object to those alleged errors at trial precludes appellate review of his claims. We further conclude that the district judge's consideration of improper evidence during the sentencing phase constituted reversible error, and therefore, Todd's sentence must be vacated and Todd must receive a new sentencing hearing before a different district judge.

### FACTS

At about 11:30 p.m. on April 29, 1994, Todd forced his way into a guest's room at the Eldorado Hotel and Casino in Reno,

Nevada, and robbed and severely beat the guest. Earlier in the day, Todd had been swindled out of $400 by an individual known only as "Matt," who had approached Todd in the casino and offered to purchase marijuana for him. After learning that he had been swindled in the drug deal, Todd broke into his ex-son-in-law's house and took his ex-son-in-law's revolver. Todd returned to the hotel and forced his way into the guest's room, mistakenly believing that Matt was staying there. In fact, the guest had nothing to do with the drug deal scam; nevertheless, Todd beat the guest about the face with his fists and the pistol and took $80 from the guest's wallet.

Eldorado Hotel security arrived while Todd was still in the guest's room. Todd exited the room, waved the pistol at the security guards, and ordered them not to move. Despite Todd's threats, the security officers ran to a nearby elevator. Todd forced his way into the elevator and ordered all of the security officers out, except for one. After the elevator descended three floors, Todd ordered the security guard, at gunpoint, to exit the elevator and walk with him down a nearby flight of stairs. Another security guard was waiting in the stairwell, a struggle ensued, and Todd eventually was subdued and taken into custody.

Following a jury trial, Todd was convicted of robbery with the use of a firearm and kidnapping in the second degree with the use of a firearm. On January 20, 1995, the district court sentenced Todd to (1) twelve years in the Nevada State Prison for the robbery conviction plus a consecutive twelve year enhancement for using a firearm and (2) a fifteen year term for the kidnapping conviction plus a consecutive fifteen year sentence enhancement for using a firearm, to be served concurrently with the sentence imposed for the robbery.

## DISCUSSION

*Todd's failure to object to alleged errors at trial precludes appellate review of his claims*

On appeal, Todd contends (1) that the State's expert witness made improper comments regarding Todd's guilt and whether voluntary intoxication is a legally permissible defense, (2) that the district court erred in admitting evidence of uncharged crimes, and (3) that the prosecutor made improper remarks to the jury during closing argument.

Part of Todd's theory of the case at trial was that he was too intoxicated at the time of the incident to form the intent necessary to commit the crimes with which he was charged. In anticipation of this defense, the State presented, during its case-in-chief, the expert testimony of a psychiatrist. In this appeal, Todd has raised

several potentially meritorious challenges to the admissibility of the expert's testimony.

Todd concedes that his counsel failed to make any objections to the expert's testimony at trial. Nevertheless, Todd contends that the errors complained of are patently prejudicial and should be considered by this court in spite of his failure to make a proper objection at trial. *See, e.g.,* Sipsas v. State, 102 Nev. 119, 125, 716 P.2d 231, 234-35 (1986) (stating that as a general rule, a failure to object at trial precludes appellate review, but where errors are patently prejudicial and inevitably inflame or excite the passions of the jurors against the accused, the general rule does not apply). In response, the State argues that this is not a case in which we should exercise our discretion to review improperly preserved assignments of error. We agree.

In deciding whether to review improperly preserved objections to the trial court's proceedings, this court must balance several competing interests. On the one hand, this court must defend both the defendant's interest in due process and the public's faith in the ability of the judicial system to protect the innocent. On the other hand, this court must also defend the process itself by encouraging litigation of all relevant issues at trial and discouraging defense counsel from remaining silent in the face of trial court errors or misconduct, for tactical reasons, in order to get a "second bite at the apple" if a verdict is returned against their clients.

In the present case, where the evidence of guilt is substantial, the alleged errors are unlikely to have affected the verdict, and the failure to object is unexcused, we conclude that these competing interests are best served by adhering to the general rule that errors not properly objected to at trial are waived. We have thoroughly reviewed Todd's additional contentions and conclude that they are either without merit or they charge errors that are harmless in light of the overwhelming evidence of guilt in this case. *See* NRS 178.598 (error not affecting substantial rights shall be disregarded); Chapman v. California, 386 U.S. 18, 24 (1967). Finding no reversible error, we affirm the judgment of the district court.

*The district judge's consideration of improper evidence at the sentencing phase mandates that Todd receive a new sentencing hearing*

We conclude that Todd's sentence must be vacated and that Todd is entitled to a new sentencing hearing based on the fact that

the district judge considered highly improper evidence during the sentencing phase of the trial.

While reviewing the record during the evaluation of this appeal, this court discovered in the confidential envelope containing Todd's parole and probation report, which had originally been sealed and sent to the district judge by the Department of Parole and Probation, a cover letter authored by Samuel T. Bull, Esq. (Bull), a private attorney not associated with these proceedings, and attached to the cover letter were five pages of handwritten notes authored by Todd.[1] The letter and attached notes were sent to and received by the district judge who heard this case. In the letter, Bull explained that while he was in the county jail visiting a client, Todd, who was incarcerated in the same facility, asked to speak to him regarding a possible civil lawsuit against the Eldorado Casino for police brutality. Bull wrote that he spoke with Todd because he "never turned anybody down." It is obvious that Todd wanted to speak to Bull because he was a lawyer. Because it was 10:30 p.m. when he and Todd met, Bull asked Todd to write down what had happened at the Eldorado Hotel, leaving nothing out, and to give this written account to him later, presumably the next day. At some point, Todd delivered to Bull his handwritten account of the events that occurred at the Eldorado Hotel.

Subsequent to reading Todd's account of the events, Bull drafted a cover letter, attached Todd's handwritten notes, and sent the package to the district judge who was hearing Todd's case. The cover letter stated in pertinent part:

> After reading [Todd's handwritten notes], I would feel that I had abdicated from moral obligation unless I gave [them] to you, for whatever use you may make of [them]. I know this guy is coming up in your court for sentencing and maybe these notes may make a difference.
>
> To my mind, the guy is obviously guilty of an assault with

---

[1] The dissent argues that the origin of the letter in question is doubtful. This is simply not true. The letter was signed by Bull, was written on Bull's stationery, and was addressed to the district judge who heard this case. The letter was found in an envelope which was sent to the district judge, was originally sealed and marked "confidential," and contained only the pre-sentencing report from the Department of Parole and Probation. The judge opened the envelope and read the parole and probation report as evidenced by the fact that he referred to the report during the sentencing hearing. The letter was discovered by this court in that envelope, which had not been resealed, along with a piece of paper containing the judge's handwritten notes made during the sentencing hearing. Therefore, it seems clear that the district judge considered the letter in question and placed the letter back into the envelope where it was eventually found by this court.

a deadly weapon, even though he was obviously high as hell on something.

Furthermore, Steve, I've known these conmen [sic] all my life and the reference to a room on the 20th floor where the stash is, takes me back 50 years. I think that's the oldest gag there is, and this crazy young guy bit on it.

If I were the judge, I'd give this ass 10 years for stupidity, and 10 years for assault. But of course, maybe he's lying
. . . .

Nothing in the file indicates that the district judge did not read the letter and the notes, and the fact that the letter was located in the confidential envelope which was to be opened only by the district judge is a strong indication that the district judge read the letter and the notes prior to sentencing Todd. Furthermore, the district judge never informed the parties that he had received and read Bull's letter and Todd's attached notes.

Todd did not object to the district judge's consideration of this letter on the grounds that such consideration was prejudicial or that it violated the attorney-client privilege, but it is almost certain that Todd did not even know of the existence of the letter or the district judge's receipt and apparent consideration of the letter. As stated above, the failure to object at trial generally precludes appellate review. Sipsas v. State, 102 Nev. 119, 125, 716 P.2d 231, 234-35 (1986). However, it appears that Todd had no opportunity to object, and this court will address plain error sua sponte. Bradley v. Romeo, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986).

In DeVaux v. American Home Assurance Co., 444 N.E.2d 355, 357 (Mass. 1983) (quoting Kurtenbach v. TeKippe, 260 N.W.2d 53, 56 (Iowa 1977)), the Massachusetts Supreme Court stated that:

> An attorney-client relationship may be implied "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance."

See also People v. Bennett, 810 P.2d 661, 664 (Colo. 1991); Stuart v. State, 801 P.2d 1283, 1285 (Idaho 1990). Furthermore, the attorney-client relationship "may be established through preliminary consultations, even though the attorney is never for-

mally retained and the client pays no fee." Bays v. Theran, 639 N.E.2d 720, 723 (Mass. 1994); *see also Stuart,* 801 P.2d at 1285; Central Cab Company v. Clarke, 270 A.2d 662, 666 (Md. 1970).

We conclude that the facts as presented in Bull's letter to the district judge clearly prove that Todd and Bull had formed an implied attorney-client relationship. Bull admitted that Todd sought his advice on matters which were within Bull's professional competence. Additionally, by stating that he would read Todd's version of the events, Bull impliedly agreed to consider the case and render the advice sought. Absent a written contract for services, we can envision no clearer facts which would establish an attorney-client relationship.

Todd's handwritten notes to Bull constituted a confidential communication. NRS 49.055. Todd had a privilege to prevent Bull from disclosing the confidential communication. NRS 49.095(1). Furthermore, by virtue of SCR 156(1),[2] Bull was duty bound to keep Todd's information to himself and not to disclose it without Todd's consent. McKay v. Board of Cty. Comm'r, 103 Nev. 490, 494, 746 P.2d 124, 127 (1987). However, Todd was presumably never afforded the opportunity to assert his privilege to prevent Bull from disclosing the information because Bull apparently sent the letter to the district judge without Todd's knowledge or consent.

"The sentencing judge has wide discretion in imposing a sentence, and that determination will not be overruled absent a showing of abuse of discretion. A sentencing court is privileged to consider facts and circumstances which would clearly not be admissible at trial." Norwood v. State, 112 Nev. 438, 440, 915 P.2d 277, 278 (1996) (citations omitted). Furthermore,

> [s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence, this court will refrain from interfering with the sentence imposed.

Silks v. State, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).

---

[2] "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation . . . ." SCR 156(1).

While our case law has until now addressed only prejudice resulting from consideration of evidence that is impalpable or highly suspect, we feel compelled to proscribe also the consideration of (1) confidential and privileged material disclosed without consent of the client, and (2) the attorney's impressions regarding that confidential and privileged information. Without prior consent of the client, privileged information of this type, and the attorney's views on that information, should never be submitted for the district judge's consideration, especially when that information is damaging to the client and could result in the client receiving a heavier sentence.

We note that the district judge's receipt and apparent consideration of Todd's actual handwritten notes was not overly prejudicial to Todd because the notes were almost identical to Todd's trial testimony. However, the judge's receipt and apparent consideration of Bull's cover letter was prejudicial to Todd to such a degree that a new sentencing hearing is required. Bull's letter commented on Todd's mental state, recommended to the district judge a sentence for Todd ("10 years for stupidity, and 10 years for assault"), and concluded by implying that Todd might be lying. An attorney's opinion that a client is lying can have great persuasive force. The district judge's receipt and apparent consideration of this prejudicial information, combined with his failure to inform the parties of the same, constituted reversible error. Therefore, we conclude that Todd's sentence must be vacated and this case must be remanded to the trial court for a new sentencing hearing before a different district judge.

## CONCLUSION

Todd's failure to object to errors during the trial precludes appellate review of his claims. However, during the sentencing phase, the district judge's consideration of Todd's confidential handwritten notes and Bull's comments on those notes constituted reversible error. Therefore, we vacate Todd's sentence and remand this case to the district court for resentencing by a different district judge.

YOUNG and SHEARING, JJ., concur.

SPRINGER, J., with whom STEFFEN, C. J., agrees, dissenting:

I have a very hard time understanding why this appellate court has intruded itself, "sua sponte," into the trial court's sentencing processes. The majority states that "[n]othing in the file indicates that the district judge did not read the letter and the notes."

Absence of evidence is not evidence of absence; and the mere fact that there is no evidence that the judge did not read the documents is not evidence that the judge either did or did not read them.

The manner in which the documents in question got into our files is doubtful. The majority apparently believes that the district judge placed the documents in the parole and probation envelope. To my mind this is all conjecture. It was found by this court's staff, out of place, in an envelope that contained the pre-sentencing report. The envelope in question had been sealed when it was delivered to the district judge; and it is anyone's guess how the contraband letter and accompanying documents got into the supreme court's file at all, much less showing up in a previously-sealed envelope that had been intended to contain only the report from the department of parole and probation. Assuming for the moment that the letter and documents in question are properly a part of the record (they certainly were not *designated* as such), I am inclined to believe (guess) that the trial judge did not consider the documents. If he had, I am satisfied that he would have advised counsel for both parties. If there is any dispute on the point, I would resolve it in favor of the trial judge.

This court is not justified in concluding, because the file does not indicate whether or not the judge read the letter and notes, that "the district judge's consideration of Todd's confidential handwritten notes and Bull's comments on those notes during the sentencing phase constituted reversible error." In my opinion the reversal of the sentencing order in this case is an unwarranted and unnecessary intrusion into the trial judge's realm. I would affirm the judgment of the trial court in its entirety.