GLEN THEODORE HARKNESS, JR., APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 21252

November 5, 1991 820 P.2d 759

*Morgan D. Harris,* Public Defender, *David T. Wall,* Deputy Public Defender, and *Stephen J. Dahl,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *Robert Langford,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Glen Theodore Harkness, Jr., was charged with murder in the shooting death of his father. At trial, it was adduced that appellant had been drinking and that he shot his father following an argument during which his father apparently indicated appellant could no longer live in his parents' home. After reporting the shooting to a neighbor, appellant drove off in his father's pickup truck and was apprehended by the police about an hour later. Various inculpatory statements made by appellant to the police were admitted at trial, including a tape recorded statement made after appellant had been "Mirandized." Also introduced were inconsistent explanations of the shooting that appellant had given to his mother at various times. Appellant did not testify at trial.

On rebuttal during closing argument, the prosecutor made the following remarks which are the subject of this appeal:

> If we have to speculate and guess about what really happened in this case, whose fault is it if we don't know the facts in this case?

These remarks were not objected to by defense counsel.[1] Later, the prosecutor stated:

---

[1] As a general rule, failure to object at trial precludes appellate consideration. *See* Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986). In this case, although counsel failed to object to the first comment contemporaneously, counsel not only immediately objected to the second comment but also moved for a mistrial. *Cf.* Clark v. State, 89 Nev. 392, 513 P.2d 1224 (1973). We conclude that counsel's conduct in objecting generally to the prosecutor's improper line of argument was adequate to preserve the issue for appellate review of both comments. Moreover, we have the power to address plain error or issues of constitutional dimension *sua sponte*. Emmons v. State, 107 Nev. 53, 61, 807 P.2d 718, 723 (1991). Where, as here, appellant presents an adequate record for reviewing serious constitutional issues, we elect to address such claims on their merits. *Cf.* Edwards v. State, 107 Nev. 150, 153 n.4, 808 P.2d 528, 530 (1991).

> Again, we know so little about the case really in terms of what the defendant told us, which naturally raises the logical question, what is he hiding?

Defense counsel objected and moved for a mistrial. The prosecutor explained that he was referring to the inconsistent explanations of the shooting that had been admitted as evidence. The district judge denied the motion for a mistrial.

The jury found appellant guilty of first degree murder with use of a deadly weapon. The district judge sentenced appellant to two consecutive life terms with the possibility of parole. This appeal followed.

Appellant contends that the prosecutor's comments, quoted above, are blatant references to appellant's failure to testify in violation of his fifth amendment rights. He contends that, even if the prosecutor merely intended to comment on the evidence, the prosecutor's statements nevertheless brought attention to the fact that appellant did not testify. Appellant further contends that the error was prejudicial because, although he admitted responsibility for his father's death, it was a close case as to whether the crime was first degree murder, second degree murder, or voluntary manslaughter. We agree that the comments were both improper and prejudicial, and therefore reverse and remand for a new trial.

The United States Constitution states that a defendant shall not "be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V; *see also* Nev. Const. Art. 1, sec. 8. A direct reference to a defendant's decision not to testify is always a violation of the fifth amendment. *See* Griffin v. California, 380 U.S. 609 (1965); Barron v. State, 105 Nev. 767, 783 P.2d 444 (1989). When a reference is indirect, the test for determining whether prosecutorial comment constitutes a constitutionally impermissible reference to a defendant's failure to testify is whether "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be comment on the defendant's failure to testify." United States v. Lyon, 397 F.2d 505, 509 (7th Cir.), *cert. denied sub nom.*, Lysczyk v. United States, 393 U.S. 846 (1968). *See also Barron*, 105 Nev. at 779, 783 P.2d at 451-52. The standard for determining whether such remarks are prejudicial is whether the error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 21-24 (1967).

We hold that the prosecutor's comments constituted improper reference to appellant's failure to testify. Although the state contends that the prosecutor merely intended to comment on the evidence, the test is whether the prosecutor "manifestly intended" it *or* whether "the jury would naturally and necessarily" take it to be a comment on the accused's failure to testify. *Lyon,* 397 F.2d at 509; *see also Barron,* 105 Nev. at 779, 783 P.2d at 452. Taken in context, we believe the jury would have taken the prosecutor's comments to be references to appellant's silence. Pointing out discrepancies or gaps in the evidence and suggesting that appellant is responsible for them is something the jury would "naturally and necessarily" take to be a comment on the accused's failure to testify. With regard to the second comment, the prosecutor had finished talking about second degree murder and had just changed the topic to first degree murder. He said he wanted to discuss some "rather curious factors." The jury would "naturally and necessarily" understand the second comment to mean that a "curious factor" which caused the jury to "know so little about the case" was appellant's "hiding" of the truth by exercising his right to remain silent. We therefore conclude that the comments were constitutionally impermissible.

Moreover, the question "whose fault is it if we don't know the facts in this case?" suggests that the accused, rather than the state, has the burden of proving or disproving the crime. Such a suggestion is clearly impermissible:

> It is a fundamental principle of criminal law that the State has the burden of proving the defendant guilty beyond a reasonable doubt . . . . The tactic of stating that the defendant can produce certain evidence or testify on his or her own behalf is an attempt to shift the burden of proof and is improper.

*Barron,* 105 Nev. at 778, 783 P.2d at 451. The first comment was therefore unconstitutional for this reason as well.

When judged by the applicable standard, the error cannot be deemed harmless beyond a reasonable doubt. This appears to have been a close case, not with regard to culpability, but with regard to the *degree* of culpability to attach to the crime. Although the trial transcript is not that long, the jury spent three hours in deliberation before rendering a verdict. It is quite probable that the jury took into account in its deliberating process the prosecutor's suggestions that appellant was responsible for gaps in the evidence, had the burden of proving or disproving the crime, and was hiding the truth. Although the jury was instructed

to draw no inferences from appellant's silence, this instruction was not a sufficient cure for the prosecutor's unconstitutional remarks. We conclude that the errors were prejudicial. Accordingly, we reverse appellant's judgment of conviction, and we remand this matter for a new trial.

STEFFEN, J., concurring:

I have elected, reluctantly, to concur in the majority's reversal because it is in accordance with current concepts of constitutional law announced by the United States Supreme Court and dutifully followed by this court. I nevertheless question whether the law as it now exists is sound, socially desirable, and warranted under the letter or spirit of the fifth amendment. My reason for writing a concurrence, therefore, is simply to provide a cacophonous note to a judicial choir that has sung on the same key for too long.

Harkness's conviction is being reversed because the prosecutor in effect commented on the former's failure to fill in the blanks concerning factual details that were known only to Harkness. Harkness elected not to testify at trial. Predictably, the majority observes that "[a] direct reference to a defendant's decision not to testify is always a violation of the fifth amendment." Primary support for the unquestioned proposition was the case of Griffin v. California, 380 U.S. 609 (1965).

Although I do not criticize my brethren in the majority for the result reached in their opinion, I nevertheless believe that the opinion too readily accepts the proposition that reference to a defendant's failure to testify is a violation of the fifth amendment. Although adherence to United States Supreme Court opinions concerning the meaning and effect of provisions within our federal constitution is both constitutionally mandated and desirable in our federal system of government, I consider it both responsible and sufficiently deferential to preeminent federal judicial authority for state courts to address areas of concern that may be at odds with the pronouncements of the Supreme Court. Attesting to the fact that constitutional law is not static are the numerous United States Supreme Court cases that have overruled or modified prior pronouncements of that court regarding constitutional principles.

It is true that the *Griffin* court stated that comment on a defendant's refusal to testify "is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Griffin*, 380 U.S. at 614. It is likewise true that the court then concluded that "the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the

accused's silence or instructions by the court that such silence is evidence of guilt." *Id.* at 615.

The *Griffin* ruling has been questioned and criticized by numerous judges and scholars. An appropriate starting point for such criticism is the amendment itself. The pertinent language of the fifth amendment specifies in unambiguous terms, "nor shall [any person] be compelled in any criminal case to be a witness against himself." Clear from the constitutional provision at issue is the fact that nothing is said or inferred about foreclosing comment or inferences from an accused's refusal to address facts that are peculiarly within his or her knowledge. It seems strongly arguable to me that the purpose of the amendment was to prevent police and prosecutors from extorting unreliable inculpatory admissions or confessions from suspects through compulsory means, rather than to erect a barrier permitting suspects to obtain a special immunity from inferences to be drawn naturally from their failure to explain the explainable. In any event, it is not my purpose to explicate the numerous reasons why the *Griffin* rationale should be seriously revisited. I merely desire to note my objection to a court rule—not a constitutional mandate—that constitutes a truth confound and unwarranted haven for the guilty, that is arguably against society's interest in bringing criminal offenders to justice. It is sufficient for my purposes to quote from a few notables whose views may be worthy of consideration.

The highly respected and sagacious former chief justice of the California Supreme Court, Roger Traynor, observed:

> The constitution is not at war with common sense. It does not compel the court to instruct the jurors to ignore inferences their reason dictates. The prevailing view is that such an instruction would be futile and confusing. The defendant, then, is normally faced with the choice of testifying to avoid adverse inferences or of remaining silent and suffering their consequences. The comments do not magnify these normal negative consequences to the extent that they become a "penalty" prohibited by the Fourteenth Amendment. Although the comments might encourage some defendants to testify to avoid the inferences that may reasonably be drawn from their failure to do so . . . we are of the opinion that this encouragement does not amount to the compulsion to testify condemned by the Fifth Amendment. The comments merely guide the jury in doing what it would normally do in any case. In some cases, comments might aid the defendant by preventing the jury from giving too much weight to his refusal to take the stand.
>
> . . . .
>
> The privilege against self-incrimination protects the defendant from assisting the prosecution in building its case

against him. It cannot protect him from the inferences that may reasonably be drawn from his failure to rebut the prosecution's case to the best of his apparent ability. For the court and counsel studiously to ignore those inferences or for the court to instruct that no inference is to be drawn from the defendant's failure to testify can only result in confusing the jury. The existence of the privilege is a matter of common knowledge, and whatever use the defendant makes of it at his trial is also a fact know [sic] to the jury. The objective of the court's instructions and counsel's arguments is to assist the jury in reaching the correct decision on the basis of all of the evidence before it. The Fifth Amendment imposes no pointless taboo on the pursuit of that objective.

People v. Modesto, 398 P.2d 753, 763-64 (Cal. 1965) (footnote and citations omitted).

In the *Griffin* dissent written by Justice Stewart and joined in by Justice White, it was stated that:

The California rule allowing comment by counsel and instruction by the judge on the defendant's failure to take the stand is hardly an idiosyncratic aberration. The Model Code of Evidence, and the Uniform Rules of Evidence both sanction the use of such procedures. The practice has been endorsed by resolution of the American Bar Association and the American Law Institute, and has the support of the weight of scholarly opinion.

The formulation of procedural rules to govern the administration of criminal justice in the various States is properly a matter of local concern. We are charged with no general supervisory power over such matters; our only legitimate function is to prevent violations of the Constitution's commands. California has honored the constitutional command that no person shall "be compelled in any criminal case to be a witness against himself." The petitioner was not compelled to testify, and he did not do so. But whenever in a jury trial a defendant exercises this constitutional right, the members of the jury are bound to draw inferences from his silence. No constitution can prevent the operation of the human mind. Without limiting instructions, the danger exists that the inferences drawn by the jury may be unfairly broad. Some States have permitted this danger to go unchecked, by forbidding any comment at all upon the defendant's failure to take the witness stand. Other States have dealt with this danger in a variety of ways, as the Court's opinion indicates. . . . But, so long as the constitutional command is obeyed, such matters of state policy are not for this Court to decide.

*Griffin,* 380 U.S. at 622-23 (Stewart, J., dissenting).

Finally, two additional brief quotes represent but a sampling of the views critical of the *Griffin* ruling. As one scholar indicated:

> *Griffin* is a monument to our seemingly limitless capacity to doubt our own good faith and to question the values that we have institutionalized in the criminal law. However we resolve this underlying identity crisis, the symbol and symptom which is *Griffin* should be rejected as without basis in the fifth amendment. Judicial honesty and the integrity of the Constitution demand no less.

Ayer, *The Fifth Amendment and the Inference of Guilt from Silence: Griffin v. California after Fifteen Years,* 78 Mich. L. Rev. 841, 870-71 (1980). Another respected scholar and jurist, commenting on *Griffin,* opined that "[t]he vice of the decision is forever fastening on the fifty states and on the nation a solution, not derivable from the language or history of the self-incrimination clause, that may not be best calculated to achieve its purpose." Friendly, *The Bill of Rights as a Code of Criminal Procedure,* 53 Cal. L. Rev. 929, 940-41 (1965).[1]

I agree with the majority in the instant case that "[w]hen judged by the applicable standard," the error begotten by that standard may not be viewed as harmless beyond a reasonable doubt with respect to the degree of Harkness's culpability. I therefore dutifully concur in the result reached by the majority. However, in my view, both the standard and the error which it creates should be reconsidered by the United States Supreme Court for all the reasons which, I am confident, that august tribunal already understands.

---

[1] This dissenting justice also previously observed:

> [T]he fifth amendment privilege serves the cause of truth by rejecting as evidence the product of coercion. It also promotes individual dignity, another cherished value in American society. But individual dignity is not enhanced by the interpretation of the privilege as a right "to be let alone" that allows the accused to thumb his proverbial nose at society as it attempts to deal effectively with crime. Such an interpretation accords little dignity to the countless victims of crime and reduces the process of establishing criminal accountability to a game that gives prime suspects time to hide before the hunt begins. Furthermore, it distorts the plain language of the privilege and its only apparent purpose as shown by the constitutional debates—that of protecting accused persons against torture.

Steffen, *Truth As Second Fiddle: Reevaluating The Place of Truth In The Adversarial Trial Ensemble,* 4 Utah L. Rev. 799, 826 (1988) (footnote omitted).