135 Nev., Advance Opinion 36

IN THE SUPREME COURT OF THE STATE OF NEVADA

JOSE AZUCENA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 74071

**FILED**

SEP 05 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK



Appeal from a judgment of conviction, pursuant to a jury verdict, of twelve counts of lewdness with a child under the age of 14; seven counts of child abuse, neglect or endangerment; five counts of indecent exposure; four counts of attempted lewdness with a child under the age of 14; and one count each of first-degree kidnapping and sexual assault of a minor under 14 years of age. Eighth Judicial District Court, Clark County; Richard Scotti, Judge.

*Reversed and remanded.*

Darin Imlay, Public Defender, P. David Westbrook and Deborah L. Westbrook, Chief Deputy Public Defenders, Clark County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Krista D. Barrie, Chief Deputy District Attorney, and Christopher S. Hamner, Deputy District Attorney, Clark County,
for Respondent.

19-37059

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

## OPINION

By the Court, HARDESTY, J.:

During voir dire in this criminal case, the trial judge threw a book against the wall, cursed, and berated, yelled at, and threatened a prospective juror for expressing her belief that she could not be impartial. We conclude that such behavior and statements constitute judicial misconduct and may have discouraged other prospective jurors from answering candidly about their own biases. Because we cannot be convinced that an impartial jury was selected under these circumstances where the judge did nothing to alleviate the intimidating atmosphere that he created, we reverse and remand for a new trial.

## FACTS

Appellant Jose Azucena was charged with multiple sex offenses against children and other related offenses. His case proceeded to a jury trial. During the second day of voir dire, a prospective juror stated that she did not think she could be unbiased toward Azucena because of her exposure to child abuse in her work as a nurse. The following colloquy took place between the trial judge and the prospective juror:

> THE COURT: So you didn't say that yesterday. All right.
>
> PROSPECTIVE JUROR NO. 177: Well, I said I had other issues.
>
> THE COURT: No, listen, what—what we're not going to have in this jury is people coming in overnight and thinking up shit and try to make shit

up now so they can get out of the jury. That's not going to happen. All right. All right. Because if I find that someone said something yesterday under oath and changes it because they're trying to fabricate something to get out of serving on this jury, there's going to be repercussions. All right.

PROSPECTIVE JUROR NO. 177: I did say—

THE COURT: Now, what's going on here?

PROSPECTIVE JUROR NO. 177: I did say.

THE COURT: Tell me what's going on.

PROSPECTIVE JUROR NO. 177: I said I had other issues yesterday. And you said you'd get back to me.

THE COURT: All right. So—so why you got issues? Why can't you—you're—you're saying that you can't be fair and impartial to both sides. You're going to completely throw out our entire justice system because you don't want to be fair and impartial.

[DEFENSE COUNSEL]: Your Honor, may we approach?

THE COURT: Is that what you're saying?

[DEFENSE COUNSEL]: Your Honor?

THE COURT: No, you can't approach. You're not going to be fair and impartial?

PROSPECTIVE JUROR NO. 177: Like I said, with my nursing history and I've been involved with child abuse and I've been involved with incest with young girls that deliver, 13-years-old, it makes me rather, you know, biased.

THE COURT: Ma'am, you're—you're off this jury. You're off this jury.

PROSPECTIVE JUROR NO. 177: Okay.

SUPREME COURT
OF
NEVADA

(O) 1947A

THE COURT: You're removed.

PROSPECTIVE JUROR NO. 177: Okay.

THE COURT: Go home. All right. I don't like your attitude.

Video of the proceedings shows the judge throwing a book against the wall when yelling at the prospective juror, "You're going to completely throw out our entire justice system because you don't want to be fair and impartial." After excusing the prospective juror, the district court continued voir dire of the remaining venire. The next prospective juror to be questioned admitted that she had been sexually abused as a child but stated that she would not be biased. No other juror subsequently disclosed any bias or expressed any concerns about being impartial.

Later, during a break and outside the presence of the venire, Azucena moved to dismiss the entire venire out of concern that the judge's behavior and language in admonishing the prospective juror had "a chilling effect on the" rest of the voir dire, such that the remaining jurors would not be comfortable in expressing any bias they might have out of fear of the judge's reaction. The trial judge denied the request as "ludicrous," explaining that the prospective juror had changed her story and that the judge needed to make it known to the venire that they could not lie to get out of jury service. The district court then proceeded with voir dire. Trial began the next day and the jury eventually returned guilty verdicts on most of the counts with which Azucena was charged. Azucena appealed.

## DISCUSSION

Azucena argues that the district court's misconduct during voir dire and denial of his request for a new venire violated his right to a fair trial by an impartial jury. He contends that the judge's behavior and

statements to the prospective juror had a "chilling effect" on voir dire and tainted the entire venire. We agree.

*Standard of review*

We have previously "held that judicial misconduct falls within the category of error which must normally be preserved for appellate review," *Parodi v. Washoe Med. Ctr., Inc.*, 111 Nev. 365, 368, 892 P.2d 588, 590 (1995); *see also Oade v. State*, 114 Nev. 619, 621-22, 960 P.2d 336, 338 (1998), but we have not addressed the standard for reviewing preserved claims of judicial misconduct. Here, Azucena preserved the issue by moving to dismiss the venire during voir dire based on the judge's conduct and its impact on the impartiality of the jury. This sufficiently notified the district court of Azucena's concerns and afforded the judge the opportunity to inquire into and cure the prejudicial effect of any misconduct.

Because we have not previously set forth the standard for reviewing a preserved claim of judicial misconduct during voir dire, we do so now. The district court has broad discretion in conducting voir dire, and this court generally will not overturn its decision regarding impartiality of the jury absent an abuse of discretion. *Cf. Morgan v. Illinois*, 504 U.S. 719, 729 (1992) ("[V]*oir dire* is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." (internal quotation marks omitted)); *United States v. Rowe*, 106 F.3d 1226, 1230 (5th Cir. 1997) (reviewing a motion to dismiss a jury panel for an abuse of discretion); *United States v. Bear Runner*, 502 F.2d 908, 911 (8th Cir. 1974) ("[I]t is fundamental that the trial court has broad discretion in deciding what questions to ask [during voir dire] and that its rulings will not be reversed absent an abuse of discretion."). However, where the challenge is based on alleged misconduct by the trial judge, which requires an evaluation of the judge's own conduct, we believe a less deferential standard

of review is warranted. *See State v. Gaither*, 156 P.3d 602, 610 (Kan. 2007) (reviewing "a claim of judicial misconduct using an unlimited standard"). We therefore will determine de novo whether judicial misconduct occurred. *Cf. Lioce v. Cohen*, 124 Nev. 1, 20, 174 P.3d 970, 982 (2008) (recognizing that attorney misconduct presents a question of law subject to de novo review). In reviewing a claim of judicial misconduct, we consider the particular circumstances and facts surrounding the alleged misconduct to determine whether it was of such a nature as to have prejudiced the defendant's right to a fair trial. *See Kinna v. State*, 84 Nev. 642, 646-48, 447 P.2d 32, 35-36 (1968).

*The trial judge committed misconduct during voir dire*

"A trial judge has a responsibility to maintain order and decorum in trial proceedings." *Oade*, 114 Nev. at 621, 960 P.2d at 338. The judicial canons require a judge to "be patient, dignified, and courteous to . . . jurors," NCJC Canon 2, Rule 2.8(B), and to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and . . . avoid impropriety and the appearance of impropriety," NCJC Canon 1, Rule 1.2. We have previously "urged judges to be mindful of the influence they wield" over jurors, as a trial judge's words and conduct are likely "to mold the opinion of the members of the jury to the extent that one or the other side of the controversy may be prejudiced." *Parodi*, 111 Nev. at 367-68, 892 P.2d at 589-90 (internal quotation marks omitted).

Here, the trial judge accused a prospective juror of fabricating an excuse (or, in the judge's own words, "thinking up shit and try[ing] to make shit up") to get out of jury service. The judge warned the venire of repercussions if a prospective juror were to change what he or she previously stated under oath in order to avoid serving on the jury. The

SUPREME COURT
OF
NEVADA

(O) 1947A

6

judge then threw a book at the wall and berated the prospective juror for stating that she could not be fair and impartial to the defendant.

We are mindful that district court judges are often faced with a myriad of excuses from prospective jurors who wish to avoid sitting on a jury. It is clear from the judge's comments and behavior that he was frustrated by the prospective juror's explanation. And based on his reasoning in denying Azucena's motion to dismiss the venire, the judge's intent was to make clear to all of the prospective jurors that they could not lie or make up excuses to avoid jury duty. While we recognize the frustration that the judge experienced, it was inappropriate to throw a book and curse and yell at the prospective juror. Trial judges are expected to treat jurors, as well as everyone else in the courtroom, with patience and dignity, and to act in a manner that promotes public confidence in the integrity of the judiciary at all times. As articulated by the Supreme Court of Kansas, the canons of judicial conduct impose high standards on judges:

> The judge should be the exemplar of dignity and impartiality, should exercise restraint over judicial conduct and utterances, should suppress personal predilections, and should control his or her temper and emotions. The judge should not permit any person in the courtroom to embroil him or her in conflict and should avoid conduct which tends to demean the proceedings or to undermine the judge's authority in the courtroom.

*State v. Miller*, 49 P.3d 458, 467 (Kan. 2002). The trial judge's words and actions during voir dire in this case fell regrettably short of those high standards.

Having determined that the trial judge's conduct during voir dire was inappropriate and constituted judicial misconduct, we must now

decide whether the misconduct prejudiced Azucena's right to a fair trial such that a new trial is warranted.

*The judicial misconduct deprived Azucena of his constitutional right to a fair trial before an impartial jury*

A criminal defendant has a constitutional right to be tried by a fair and impartial jury. U.S. Const. amend. VI; Nev. Const. art. 1, § 3. "The importance of a truly impartial jury, whether the action is criminal or civil, is so basic to our notion of jurisprudence that its necessity has never really been questioned in this country." *Whitlock v. Salmon*, 104 Nev. 24, 27, 752 P.2d 210, 212 (1988) (citing *Bear Runner*, 502 F.2d at 911). The voir dire process is a crucial means of ensuring the defendant's right to an impartial jury, as it allows the parties and the district court "to identify unqualified jurors" and "to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence." *Morgan*, 504 U.S. at 729-30 (internal quotation marks omitted); *see also Whitlock*, 104 Nev. at 27, 752 P.2d at 212 ("The purpose of voir dire examination is to determine whether a prospective juror can and will render a fair and impartial verdict on the evidence presented and apply the facts, as he or she finds them, to the law given."). Voir dire is effective, however, only if the prospective jurors answer candidly. While we generally presume that jurors answer questions honestly during voir dire, *see Rowe*, 106 F.3d at 1229; *State v. Barnes*, 481 S.E.2d 44, 56 (N.C. 1997), that presumption disappears "when jurors are given reason to fear reprisals for truthful responses," *Rowe*, 106 F.3d at 1229. Creating such fear in the jurors "cut[s] off the vital flow of information from venire to court," thus depriving the defendant of an impartial jury. *Id.* at 1230.

Here, the trial court's statements and conduct with the prospective juror may have discouraged other prospective jurors from

responding honestly about their own biases out of fear of repercussions. Because the judge created an atmosphere of intimidation and did nothing to alleviate the impact of his behavior, we cannot be confident that an impartial jury was selected.

The State argues that any judicial misconduct during voir dire was harmless and therefore does not warrant reversal. When considering whether judicial misconduct warrants reversal, we generally will consider the strength and extent of the evidence of guilt. *Kinna*, 84 Nev. at 647, 447 P.2d at 35. "However, even when evidence is quite apparent, misconduct may so interfere with the right to a fair trial as to constitute grounds for reversal." *Id.* We conclude this is such a case. The misconduct here interfered with the right to an impartial jury. As such, the strength and weight of the evidence does not afford us confidence in the verdict. *See Rowe*, 106 F.3d at 1230 (explaining that a defendant's right to an impartial jury may never be treated as harmless, and a defendant does not need to "show specific prejudice from a *voir dire* procedure that cut off meaningful responses to critical questions"); *see also Gomez v. United States*, 490 U.S. 858, 876 (1989) (stating that the right to an impartial jury is a "basic fair trial right[ ] that can never be treated as harmless" (internal quotation marks omitted)).

Accordingly, we reverse the judgment of conviction and remand for a new trial before a different district judge.[1]

_____, J.
Hardesty

We concur:

_____, J.
Stiglich

_____, J.
Silver

---

[1]Azucena raises several other issues on appeal, including that the district court abused its discretion in admitting testimony at trial that exceeded the scope of NRS 51.385, and that his convictions were not supported by sufficient evidence. We agree that the district court abused its discretion in admitting testimony exceeding the scope of NRS 51.385, but we reject his claim that the evidence was insufficient to support his convictions. *See* NRS 200.366; NRS 200.508(1); NRS 201.230; *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (providing that in reviewing a challenge to the sufficiency of the evidence, this court considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). Because we reverse Azucena's convictions based on the district court's improper conduct during voir dire, we decline to address the remaining issues raised on appeal.