**137 Nev., Advance Opinion 29**

IN THE SUPREME COURT OF THE STATE OF NEVADA

GUSTAVO ADONAY GUNERA-PASTRANA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79861

**FILED**

JUL 08 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of two counts each of lewdness with a child under the age of 14 and sexual assault of a minor under 14 years of age. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Reversed and remanded.*

Darin F. Imlay, Public Defender, and Deborah L. Westbrook, Chief Deputy Public Defender, Clark County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Taleen Pandukht and Sandra DiGiacomo, Chief Deputy District Attorneys, Clark County,
for Respondent.

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

Appellant Gustavo Adonay Gunera-Pastrana received an aggregate sentence of 35 years to life in prison after being convicted of two

21-19530

counts each of sexual assault of a minor under 14 years of age and lewdness with a child under the age of 14. Despite the gravity of these crimes, the issue of guilt was close because the State presented no physical evidence to prove that Gunera-Pastrana committed the offenses. Moreover, serious errors—judicial, juror, and prosecutorial misconduct—affected the verdict. The cumulative effect of these errors violated Gunera-Pastrana's due process right to a fair trial. Thus, we reverse the judgment of conviction and remand for a new trial. In doing so, we clarify law pertaining to judicial, juror, and prosecutorial misconduct.

## FACTS

The following facts, although the parties dispute them, led to the verdict. Gunera-Pastrana lived with his girlfriend and her two children—J.J.M., a boy, and M.M., a girl. M.M. had surgery to remove an ovary, leaving her with scars above her genitals. One day, Gunera-Pastrana was alone with M.M., who was 12 years old, and reached into her pants under the pretense that he needed to check her scars. Instead, Gunera-Pastrana rubbed M.M.'s genitals. Weeks later, he kissed M.M. in a sexual manner. On a third occasion, he digitally penetrated M.M.'s vagina and performed cunnilingus on her. M.M. told J.J.M. that she was raped. M.M. then told her mother, who called the police.

## PROCEDURAL HISTORY

Gunera-Pastrana was charged under NRS 201.230 with two counts of lewdness with a child under the age of 14 years for touching M.M.'s genitals and kissing her. He was also charged under NRS 200.366(1)(b) with two counts of sexual assault of a minor under the age of 14 years for digitally penetrating M.M.'s vagina and performing cunnilingus on her. The jury found him guilty on all counts. He was sentenced to serve an aggregate prison term totaling 35 years to life.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

## DISCUSSION

*Judicial misconduct*

During admonishments before opening statements, the district court told the jury, "the Defendant is presumed innocent," but then asked,

> [W]hat do you really mean by presumption of innocence when we know that the Defendant has been arrested by the police department and we know that the District Attorney is prosecuting the Defendant[?] *And we also know that the police department didn't go out and select somebody at random to prosecute.*
>
> So we know that you know these things, and you could legitimately ask well, *how can we maintain this presumption of innocence when we know that he's been arrested for something and we know that the District Attorney is prosecuting him*[?] Ladies and gentlemen, I hope that what I have to say here will help you understand exactly what we mean by this presumption of innocence.

(Emphases added.) The district court later told jurors that they must find Gunera-Pastrana guilty beyond a reasonable doubt and instructed the jury on the presumption of innocence, but the court never explained the meaning of its comment "that the police department didn't go out and select somebody at random to prosecute."

Gunera-Pastrana argues that the district court committed misconduct by undermining the presumption of innocence. He did not, however, preserve the error for appellate review by objecting below. The State argues that the district court's comments did not prejudice Gunera-Pastrana's substantial rights because the district court separately instructed the jury that the jury must presume he is innocent unless his guilt is proven beyond a reasonable doubt.

 

We apply plain-error review to unpreserved claims of judicial misconduct, *Parodi v. Washoe Med. Ctr., Inc.*, 111 Nev. 365, 368, 892 P.2d 588, 590 (1995), and unpreserved constitutional errors, *Martinorellan v. State*, 131 Nev. 43, 48, 343 P.3d 590, 593 (2015). For plain-error review, "an appellant must demonstrate that: (1) there was an error; (2) the error is plain, meaning that it is clear under current law from a casual inspection of the record; and (3) the error affected the defendant's substantial rights." *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018) (internal quotation marks omitted).

The judicial canons require a judge to "uphold and apply the law." NCJC Canon 2.2. "In reviewing a claim of judicial misconduct, we consider the particular circumstances and facts surrounding the alleged misconduct to determine whether it was of such a nature as to have prejudiced the defendant's right to a fair trial." *Azucena v. State*, 135 Nev. 269, 272, 448 P.3d 534, 537 (2019). "The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *Quercia v. United States*, 289 U.S. 466, 470 (1933) (internal quotation marks omitted). Thus, we have explained that "[w]hat may be innocuous conduct in some circumstances may constitute prejudicial conduct in a trial setting." *Parodi*, 111 Nev. at 367, 892 P.2d at 589.

"A defendant in a criminal action is presumed to be innocent until the contrary is proved [beyond a reasonable doubt] . . . ." NRS 175.191. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *see also* Nev. Const. art. 1, § 8. To this end, the United States Supreme Court "has

declared that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978).

Undermining the defendant's presumption of innocence constitutes judicial misconduct. The district court's comment that "we know that the Defendant has been arrested by the police department" and "that the police department didn't go out and select somebody at random to prosecute" undermined Gunera-Pastrana's presumption of innocence because it improperly underscored the facts of his arrest and prosecution. *See id.* at 485; *see also Haywood v. State*, 107 Nev. 285, 288, 809 P.2d 1272, 1273 (1991) ("[V]erbal references [to a defendant's in-custody status] may provide an appearance of guilt that a jury mistakenly might use as evidence of guilt.").

Because "[t]he influence of the trial judge on the jury is necessarily and properly of great weight," *Quercia*, 289 U.S. at 470 (internal quotation marks omitted), the district court's comment invited the jury to consider the facts of Gunera-Pastrana's arrest as evidence of his guilt. Thus, the district court's comment constitutes misconduct because its "words and conduct [were] likely to mold the opinion of the members of the jury to the extent that" Gunera-Pastrana may have been prejudiced. *Azucena*, 135 Nev. at 272, 448 P.3d at 538 (internal quotation marks omitted). As we have explained, the district court "should exercise restraint over judicial conduct and utterances." *Id.* at 273, 448 P.3d at 538 (quoting *State v. Miller*, 49 P.3d 458, 467 (Kan. 2002)). We conclude that this misconduct constitutes plain error.

However, we further conclude that this error did not prejudice Gunera-Pastrana's substantial rights because the jury was separately instructed on the presumption of innocence in a manner consistent with existing law. *See Summers v. State*, 122 Nev. 1326, 1333, 148 P.3d 778, 783 (2006) (explaining that we presume that juries follow their instructions); *see also Morales v. State*, 122 Nev. 966, 972, 143 P.3d 463, 467 (2006) (holding that an unpreserved violation of the defendant's presumption of innocence did not warrant reversal). Thus, this error alone does not warrant reversal.

*Juror misconduct*

At trial, M.M. testified against Gunera-Pastrana, but she had trouble remembering the precise sequence of each instance of sexual misconduct. In closing, the State repeatedly argued that, although M.M. did not remember the order of each instance of sexual misconduct, the jury should nonetheless apply common sense to evaluate her testimony. The district court also instructed the jury to apply common sense to its deliberations. After the verdict was announced, the jury foreman told the bailiff "that it took [g]oogling common sense . . . to reach a verdict." The district court told the parties about the jury's googling, noting that "both sides were . . . heavily emphasizing common sense [in closing]."

The district court held an evidentiary hearing, and the jury foreman testified that two jurors googled the definition of "common sense" on their cell phones—despite being instructed not to use the internet—and read the definitions to other jurors. He also testified that "[t]he [g]oogl[ing] was done toward the end of deliberation" and that the jury had already reached a verdict on the lewdness charges. After the foreman testified, the district court suggested to the parties that there was no reason to question other jurors. Thus, the jurors who actually googled "common sense" were not questioned as to what definition of the term they used. Gunera-

Pastrana moved for a new trial, but the district court denied his motion. The district court concluded that the term "common sense" was not in any of the charges and "was inconsequential and extraneous to the finding of guilt," but the court inexplicably omitted from the order denying the motion its previous statement on the record that "both sides were . . . heavily emphasizing common sense [in closing]."

Gunera-Pastrana argues that the district court erred by not analyzing the prejudicial effect of the extraneous evidence in the context of the trial as a whole. He adds that the district court found on the record that both parties relied heavily on the term "common sense" in closing but disregarded that finding in its order denying his motion for a new trial. The State concedes that jurors googling "common sense" was misconduct but argues that the term was not in any of the charges and there was no resulting prejudice.

"A denial of a motion for a new trial based upon juror misconduct will be upheld absent an abuse of discretion by the district court," *Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003), but we review de novo whether a jury's use of extraneous information was prejudicial, *Jeffries v. State*, 133 Nev. 331, 336, 397 P.3d 21, 27 (2017). To "prevail on a motion for a new trial based on juror misconduct, the defendant must present admissible evidence sufficient to establish: (1) the occurrence of juror misconduct, and (2) a showing that the misconduct was prejudicial." *Meyer*, 119 Nev. at 563-64, 80 P.3d at 455. In *Meyer v. State*, we explained that the jury's "exposure to extraneous information via independent research . . . must be analyzed [for prejudice] in the context of the trial as a whole to determine if there is a reasonable probability that the information affected the verdict." *Id.* at 565, 80 P.3d at 456 (footnote

omitted). To guide this analysis, we explained that the district court should consider "how the material was introduced to the jury (third-party contact, media source, independent research, etc.), the length of time it was discussed by the jury, and the timing of its introduction (beginning, shortly before verdict, after verdict, etc.)." *Id.* at 566, 80 P.3d at 456. These factors, however, are not exhaustive. *Jeffries*, 133 Nev. at 335, 397 P.3d at 26.

In this case, the jury's use of Google to define the term "common sense" is sufficiently analogous to the use of an extraneous dictionary definition to warrant application of the *Meyer* framework. While *Meyer* explained that the jury's use of an extrinsic dictionary definition is "unlikely to raise a presumption of prejudice," 119 Nev. at 565 & n.28, 80 P.3d at 456 & n.28, it left open the question of how the district court should analyze that issue. We now clarify that the district court should apply the *Meyer* framework and a juror who proffered an extraneous dictionary definition should be questioned as to what definition was applied, *see State v. Williamson*, 807 P.2d 593, 597 (Haw. 1991), so that the district court can ascertain whether "the jury might have been misled" by the definition, *People v. Karis*, 758 P.2d 1189, 1208 (Cal. 1988). In assessing whether the definition applied by jurors was prejudicial, the relevant inquiry remains "whether the average, hypothetical juror would be influenced by the juror misconduct," *Meyer*, 119 Nev. at 566, 80 P.3d at 456, and whether "there is a reasonable probability that [the information] affected the verdict," *id.* at 565, 80 P.3d at 456.

Although the State argues that no prejudice resulted because the term "common sense" was not in any of the charged crimes, we reject its position that prejudice can result only if an extraneous dictionary definition pertains to a term in the charges. As the district court stated on the record,

SUPREME COURT
OF
NEVADA

(O) 1947A

both sides heavily emphasized the term in closing. Moreover, the district court instructed the jury to apply common sense to its deliberations. Because the term was emphasized at trial, the jury's use of Google to ascertain its meaning could have prejudiced Gunera-Pastrana. The crux of this analysis, then, is whether there was a reasonable probability that the definition the jurors applied "affected the verdict." *Id.* The district court suggested to the parties that there was no need to question the jurors who used Google, so there is no record of what definition the jury applied. Thus, Gunera-Pastrana was deprived of his ability to demonstrate that prejudice resulted from the jury's misconduct. Thus, we conclude that the jury's misconduct contributes to cumulative error.

*Prosecutorial misconduct*

At the end of the State's closing argument, the prosecutor asserted, "There really are two people who know exactly what happened in that living room and that bedroom that can talk about it. And that's [M.M.] and the—." Gunera-Pastrana objected, and the district court sustained the objection. The State then *repeated*, "There's two people that know what happened, and [M.M.] told you what happened. She told you what he did to her."

Gunera-Pastrana argues that the State's comments constitute prejudicial prosecutorial misconduct because the State indirectly commented on his decision not to testify in violation of the Fifth Amendment. U.S. Const. amend. V; *see also* Nev. Const. art. 1, § 8. The State answers that it did not indirectly comment on Gunera-Pastrana's failure to testify and that its comments were not of such a nature that the jury would naturally and necessarily take them that way. It adds that, even if the comments were improper, the jury was instructed to draw no

inferences of guilt from the defendant's failure to testify, so any error was harmless.

We apply a two-step analysis in our review of prosecutorial misconduct claims. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). "First, we must determine whether the prosecutor's conduct was improper. Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal." *Id.* (footnote omitted). "With respect to the second step of this analysis, this court will not reverse a conviction based on prosecutorial misconduct if it was harmless error." *Id.*

The Fifth Amendment and the Nevada Constitution alike forbid a prosecutor from directly commenting on the defendant's decision not to testify. *Griffin v. California*, 380 U.S. 609, 615 (1965); *see also* Nev. Const. art. 1, § 8. To determine whether an *indirect* reference violates the Fifth Amendment, we examine "whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be comment on the defendant's failure to testify." *Harkness v. State*, 107 Nev. 800, 803, 820 P.2d 759, 761 (1991) (quoting *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir. 1968)). "The standard for determining whether such remarks are prejudicial is whether the error is harmless beyond a reasonable doubt." *Id.*

In *Harkness*, the State commented that, "If we have to speculate and guess about what really happened in this case, whose fault is it if we don't know the facts in this case?" *Id.* at 802, 820 P.2d at 760. The State also said, "[W]e know so little about the case really in terms of what the defendant told us, which naturally raises the logical question, what is he hiding?" *Id.* at 803, 820 P.2d at 760. In holding that the State violated the Fifth Amendment, we reasoned that "the question 'whose fault is it if we

don't know the facts in this case?' suggests that the accused, rather than the [S]tate, has the burden of proving or disproving the crime." *Id.* at 804, 820 P.2d at 761.

We have not addressed whether comments like the prosecutor's in this case—i.e., "[t]here's two people that know what happened, and [the victim] told you what happened"—are indirect references to the defendant's failure to testify. Three persuasive opinions have held that similar comments are an indirect reference to a defendant's failure to testify. *See Bowler v. United States*, 480 A.2d 678, 682-84 (D.C. 1984) ("[Y]ou see there were two people there that day, Mr. Bowler and Mr. Jackson. And Mr. Jackson is dead now, so he can't talk."); *State v. Williams*, 673 S.W.2d 32, 35 (Mo. 1984) ("There's only two people back there that know[ ] exactly what happened and can tell you—who know[ ] exactly what happened back there."); *State v. Miller*, 412 P.2d 240, 245-46 (N.M. 1966) ("There's only two people that actually know what happened in the liquor store that night. One of those persons is dead . . . ."). We find the foregoing cases persuasive. Thus, we clarify that remarking that "[t]here's two people that know what happened," with one of those people being a defendant who has invoked the right not to testify, is an impermissible indirect reference because it is "of such a character that the jury would naturally and necessarily take it to be comment on the defendant's failure to testify." *Harkness*, 107 Nev. at 803, 820 P.2d at 761 (internal quotation marks omitted).

Here, like the prosecutorial statements in the foregoing persuasive cases, the State indirectly referenced Gunera-Pastrana's failure to testify by arguing that only two people know what happened, and M.M. was the only one of the two to testify. Thus, these comments were of such a character that the jury may have naturally and necessarily taken them to

SUPREME COURT
OF
NEVADA

(O) 1947A

be a comment on Gunera-Pastrana's failure to testify, thereby suggesting that he had the burden of disproving these crimes. More troubling, the prosecutor repeated her comment after the district court sustained Gunera-Pastrana's objection. Accordingly, we conclude that this indirect reference to Gunera-Pastrana's failure to testify violated the Fifth Amendment and Nevada Constitution, and constituted prosecutorial misconduct.

The State argues that this error was harmless because the jury was instructed that it could not draw any inference of guilt from the fact that Gunera-Pastrana did not testify. This argument is contrary to our precedent. *See id.* at 804-05, 820 P.2d at 762 ("Although the jury was instructed to draw no inferences from appellant's silence, this instruction was not a sufficient cure for the prosecutor's unconstitutional remarks [on the defendant's failure to testify]."). Moreover, as explained below, we need not decide whether the separate jury instruction rendered this error harmless beyond a reasonable doubt because cumulative error warrants reversal.

*Cumulative error*

Although the State's misconduct alone potentially warrants reversal, the foregoing errors could have cumulatively prejudiced Gunera-Pastrana's due process right to a fair trial. *See DeChant v. State*, 116 Nev. 918, 927, 10 P.3d 108, 113 (2000) ("Although we have concluded that . . . [one trial error] alone would warrant reversal, we have also analyzed the cumulative effect of the errors at trial."). Thus, our analysis turns to Gunera-Pastrana's argument that cumulative error warrants reversal.

 

"The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (internal quotation marks omitted). We consider three factors when reviewing for cumulative error: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotation marks omitted).

*The issue of guilt was close*

Gunera-Pastrana argues that the issue of guilt was close because M.M.'s testimony changed significantly over time. The State argues that the issue of guilt was not close because overwhelming evidence supported the verdict.

M.M.'s testimony revealed three inconsistencies that led the parties to dispute her credibility. First, according to testimony from M.M.'s mother and a police officer, M.M. said that Gunera-Pastrana kissed her the day she told her mother about the sexual misconduct. M.M. separately testified at the preliminary hearing that immediately after Gunera-Pastrana kissed her, she told her mother about the sexual misconduct. At trial, however, M.M. testified that Gunera-Pastrana kissed her two weeks before she told her mother about the misconduct. Second, M.M. testified at the preliminary hearing that the cunnilingus and digital penetration occurred weeks before she told her mother. At trial, however, M.M. testified that these acts occurred the day before she told her mother. Third, M.M. testified at the preliminary hearing that Gunera-Pastrana touched her beneath her underwear, but testified at trial that the touching occurred over her underwear.



Given M.M.'s conflicting testimony, the parties disputed her credibility.[1] However, no physical evidence proved that Gunera-Pastrana committed these crimes. Thus, the issue of guilt came down to whether M.M.'s allegations were truthful. Based on M.M.'s conflicting testimony and the lack of physical evidence to prove the crimes, we conclude that the issue of guilt was close.

*Three substantial errors undermined Gunera-Pastrana's defense*

Gunera-Pastrana argues that the quantity and character of the errors warrant reversal. The State argues that Gunera-Pastrana presented no meritorious claim of error.

As we concluded, judicial, juror, and prosecutorial misconduct occurred at trial. The judicial misconduct violated Gunera-Pastrana's presumption of innocence by underscoring the facts of his arrest and prosecution. Jurors committed misconduct by googling a definition of "common sense" after the parties disputed the credibility of M.M.'s testimony and the State urged the jury to nonetheless apply common sense to find Gunera-Pastrana guilty. The State committed misconduct by insinuating that Gunera-Pastrana was less believable because he invoked his right not to testify. Moreover, the State *repeated* its argument that Gunera-Pastrana failed to testify after the district court sustained his objection. These errors "together had the effect of unfairly undermining [Gunera-Pastrana]'s credibility and defense in a rather close case." *Big Pond v. State*, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985); *see also Valdez*, 124 Nev. at 1197, 196 P.3d at 482 (reversing for cumulative error where

---

[1]We recognize that other witnesses testified against Gunera-Pastrana. However, this testimony was based on M.M.'s statements, which were ultimately inconsistent.

"the quantity and character of the errors was substantial"). Thus, we conclude that these errors were substantial.

*The charged crimes were grave*

Gunera-Pastrana argues that the crimes he was convicted of were grave, which the State concedes. The crimes here were grave because they led to an aggregate sentence of 35 years to life in prison.

*The errors cumulatively denied Gunera-Pastrana a fair trial*

"[W]here the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). Here, the issue of guilt was close because—with no physical evidence to prove the crimes—the verdict came down to whether the jury believed M.M.'s testimony.[2] The judicial, juror, and prosecutorial misconduct was substantial because it undermined Gunera-Pastrana's credibility and defense. Gunera-Pastrana was convicted of grave crimes. Accordingly, we conclude that the cumulative effect of errors denied Gunera-Pastrana's due process right to a fair trial.[3]

---

[2]In *Franks v. State*, we explained that, in the context of sufficiency-of-the-evidence review, a sexual assault victim's testimony "need not be corroborated." 135 Nev. 1, 7, 432 P.3d 752, 757-58 (2019). Our holding is consistent with *Franks* because we are reviewing whether the cumulative effect of trial errors denied Gunera-Pastrana the right to a fair trial, which requires us to ascertain whether the issue of guilt was close rather than the sufficiency of the evidence.

[3]Gunera-Pastrana also argues that (1) the district court gave erroneous lewdness and flight instructions, (2) the State committed misconduct by asking improper leading questions, and (3) he was denied a fair venire because the jury commissioner did not comply with NRS 6.045(3)(c). While we have considered these arguments, we need not reach them given the disposition of this appeal.

## CONCLUSION

"A criminal defendant has a fundamental right to a fair trial secured by the United States and Nevada Constitutions." *Watters v. State*, 129 Nev. 886, 889, 313 P.3d 243, 246 (2013) (internal quotation marks omitted). Indeed, "[i]t is elementary that a fair trial in a fair tribunal is a basic requirement of due process." *Weiss v. United States*, 510 U.S. 163, 178 (1994) (internal quotation marks omitted). Cumulative error here violated Gunera-Pastrana's due process right to a fair trial. We therefore reverse the judgment of conviction and remand for a new trial.

_____, J.
Parraguirre

We concur:

_____, J.
Stiglich

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A

16